UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LIFE COVENANT CHURCH, INC.,

                  Plaintiff,

   -against-                                               1:14-CV-1530 (LEK/DJS)

TOWN OF COLONIE, *et al.*,

                  Defendants.

___

**MEMORANDUM-DECISION AND ORDER**

**I.    INTRODUCTION**

Plaintiff Life Covenant Church, Inc. ("LifeChurch") commenced this lawsuit against defendants Town of Colonie, the Town of Colonie Planning Board, Planning Board members Peter Stuto, Timothy Lane, Louis Mion, Susan Milstein, Brian Austin, Craig Shamlian, Kathleen Dalton, Planning Director Joseph LaCivita, Town Attorney Michael C. Magguilli, and Assistant Town Attorney Rebekah Nellis Kennedy, asserting violations of the federal and New York state constitutions, as well as the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc *et seq*. Dkt. Nos. 1 ("Complaint"), 48 ("Amended Complaint"). LifeChurch also seeks an order of mandamus pursuant to New York Civil Practice Law and Rules ("CPLR") section 78 requiring Defendants to remove certain conditions placed on LifeChurch's site plan. Am. Compl. ¶¶ 122–23. Presently before the Court is Defendants' motion to dismiss, Dkt. No. 49 ("Motion"), see also Dkt. Nos. 49-3 ("Memorandum"), 52 ("Opposition"), 54-2 ("Reply"), and LifeChurch's motion to strike a portion of the Reply, Dkt. No. 56 ("Motion to Strike"). Since briefing the Motion, the parties each moved for summary judgment. Dkt. Nos. 58 ("Defendants' Motion for Summary Judgment"), 61 ("LifeChurch's Motion for Summary Judgment").

LifeChurch also moved to exclude Defendants' expert. Dkt. No. 59 ("Motion to Exclude"). Because the Court lacks subject matter jurisdiction over LifeChurch's claims, Defendants' Motion is granted, and the remaining motions are denied as moot.

## II.   BACKGROUND

### A. Factual Background

LifeChurch is a religious organization that provides evangelical Christian faith services and faith-oriented classes to residents of New York's Capital District. Am. Compl. ¶ 23. In 2013, LifeChurch began the process of constructing a new facility to accommodate its membership and expand its faith and educational services. Id. ¶ 24. It purchased property in the Town ("Property"), on which it planned to construct a new church facility ("Project"). Id. ¶ 26. The Project would contain a 36,601 square foot facility for worship services, eight religious education and training rooms, and 457 parking spaces. Id.

To begin development, LifeChurch commenced the Town's site plan review and subdivision process. Id. ¶ 28. On March 21, 2013, LifeChurch submitted a zoning verification to the Town's building department. Id. ¶ 29. Upon review of its application, the Town Building Inspector notified LifeChurch's project engineer, Brian Sipperly, of a concern regarding access to the Property. Id. ¶ 30. The submitted plans proposed access by means of an existing easement along a private road known as Moffat Lane. Id. The Town Building Inspector told LifeChurch that Moffat Lane could be the Property's point of access only if the plans were revised to include construction of a cul-de-sac at the end of the road. Id. ¶ 31. LifeChurch revised its plans accordingly, and the zoning verification was approved for the subdivision portion of the application. Id. ¶ 32. But the zoning verification for the site plan was denied because the

proposed building exceeded the allowable square footage. Id. On April 8, 2013, LifeChurch applied for an area variance with the Town's Zoning Board of Appeals ("ZBA"). Id. ¶ 33. After an administrative error by the Town Attorney's office delayed consideration at the June 6, 2013 ZBA meeting, the application was scheduled to be addressed at the August 15, 2013 meeting. Id.

On June 12, 2013, LifeChurch was informed that the Town would not approve access to the Property via Moffat Lane unless it obtained an Open Development Area ("ODA") pursuant to New York Town Law section 280-a. Id. ¶ 34. On August 15, 2013, it requested an ODA. Id. ¶ 35. Shortly thereafter, the Town Attorney questioned whether an ODA would be required because the Property had frontage on a public street, Watervliet-Shaker Road. Id. ¶ 36. Defendants then informed LifeChurch that the Town Planning Board would not consider an ODA for the Property. Id. ¶ 37.

On October 13, 2013, a meeting was held with the New York State Department of Transportation ("NYSDOT") to discuss allowing access to the Property directly from Watervliet-Shaker Road. Id. A revised plan was submitted showing direct access from Watervliet-Shaker Road. Id.

On December 19, 2013, the ZBA granted the area variance allowing the 36,601 square foot building and Sipperly requested that the site plan application be placed on the Town Planning Board's January 21, 2014 agenda. Id. ¶ 38. However, on January 3, 2014, Sipperly was told that the resubmitted site plan application, previously submitted on November 6, 2013, was incomplete. Id.

The Town's planning staff requested a meeting to discuss the proposed access via Watervliet-Shaker Road. Id. ¶ 39. At a January 8, 2014 meeting, Town planning staff informed

LifeChurch that they preferred access from Moffat Lane rather than from Watervliet-Shaker Road. Id. LifeChurch requested that this matter be placed on the January 21, 2014 Planning Board agenda. Id. Sipperly submitted revised plans showing access from Moffat Lane. Id.

On January 17, 2014, the Planning Director informed LifeChurch that the Town Attorney had pulled the matter from the January 21 agenda. Id. ¶ 40. LifeChurch contacted the Town Attorney, who stated that he was unsure whether the proposed use constituted a church because it appeared to be a "commercial television broadcast studio." Id. LifeChurch submitted documentation to the Town Attorney showing that the Project was intended to be a place of worship. Id.

On March 10, 2014, following completion of additional traffic analysis, LifeChurch submitted an updated complete application package to the Town. Id. ¶ 41. The application was rejected because the title block on the plan provided the wrong location for the Project. Id. On March 31, 2014, Sipperly was told that the application was complete and would be placed on the Town Planning Board's agenda for May 6, 2014. Id. ¶ 42. On May 1, the matter was rescheduled for May 20, and on May 15, LifeChurch learned that it would not be heard on May 20. Id. ¶ 43. Defendants offered several reasons for the delays: the Town had insufficient time to review recently submitted traffic data, NYSDOT personnel preferred access from Moffat Lane instead of the proposed new curb cut, and the Town's designated engineer issued a memo recommending that the Project be accessed via Moffat Lane. Id. LifeChurch then requested an immediate meeting with all parties involved to resolve the conflicting requests. Id.

At a May 22, 2014 meeting, the Town Attorney asked Plaintiff to submit another request for an ODA to use Moffat Lane as the access point. Id. ¶ 44. The Town, in effect, made the same

4

recommendation it had in August 2013, though it had failed to address the ODA issue for the past year. Id. On June 19, 2014, the Assistant Town Attorney told the project engineers that the Town Planning Board would not hear the ODA request. Id. ¶ 45. LifeChurch received no explanation for this refusal, but was placed on the August 12, 2014 Town Planning Board agenda after informing the Town's Planning Director that it intended to pursue litigation to compel the Town to place its application on the agenda. Id.

On August 12, 2014, LifeChurch appeared before the Town's Planning Board for a second sketch review. Id. ¶ 46. Its engineers demonstrated that the proposed driveway location complied with NYSDOT's regulations and standards. Id. Planning Board members raised three new issues at this time, denying LifeChurch's sketch plan to allow it to address these new issues. Id.

LifeChurch was then placed on Planning Board's agenda for September 23, 2014. Id. ¶ 47. On September 17, it was rescheduled to October 7. Id. In response, LifeChurch sent a demand letter to Defendants asserting that Defendants' repeated delays violated LifeChurch's constitutional rights and that if the matters were not placed on the October 7 agenda and approved at that time, it would "consider any further efforts futile and would proceed accordingly." Id. Additionally, LifeChurch stated that "any further delays or requests for additional information would further illustrate that the Town was merely seeking to delay approvals indefinitely and that such actions would be treated as denials of [its] requests." Id. Defendants did not place LifeChurch's application on the Town Planning Board's agenda for the October 7 meeting. Id.

5

The Planning Board next considered LifeChurch's application at its October 21, 2014 meeting. Id. ¶ 49. At the meeting, LifeChurch presented its application, and church attendees addressed the Planning Board, explaining its role in their lives and the local community. Id. Following the presentation and testimony, the Planning Board requested that Town staff and the Town's outside engineer meet with LifeChurch's representatives to address any outstanding issues in preparation for concept acceptance. Id. ¶ 50.

Two days later, LifeChurch's representatives met with the Planning Director and representatives from the Town's outside engineering firm who told LifeChurch they planned to meet with the Town Planning Board later that evening. Id. ¶ 51. After LifeChurch did not hear back from the Town or engineering firm, it was told that the Town's engineers had not been working on the project because LifeChurch's escrow account lacked necessary funds. Id. ¶¶ 52–53. LifeChurch replenished the account, but was told it was too late to be placed on the next Town Planning Board agenda, and it would have to wait until December 16, 2014. Id.

In advance of the December meeting, LifeChurch contacted the Town's engineer to ask if any additional materials were needed to complete its application. Id. ¶ 54. The engineer stated that only the environmental assessment form was needed, but LifeChurch had submitted that document to Defendants the previous week. Id.

On November 25, 2014, LifeChurch met with the Town's engineer and received a list of conditions that he intended to recommend to the Town for any ODA approval. Id. ¶¶ 56–57. These conditions "attempted to regulate critical aspects of Plaintiff's worship services and religious activities, including the number of worship services and the time for those worship services." Id. ¶ 57. The restrictive conditions included the following: "Service times shall be a

minimum of 2 hours apart from start to start," "Sunday service times shall be limited to up to three services without additional Planning Board review," and "Weekday service times shall start no earlier than 6:30 PM." Id., Ex. A. LifeChurch informed the outside engineer that "a number of the conditions appeared to be unacceptable and would likely be rejected by. . . church leadership." Id.

Town officials told LifeChurch that it would not be placed upon the December 16, 2014 agenda unless it accepted the conditions recommended by the Town's engineer. Id. ¶ 58. LifeChurch later confirmed that the matter was not placed on the agenda. Id.

LifeChurch then filed this action on December 17, 2014. Compl. After commencing suit, LifeChurch's request for site plan approval was placed on the Planning Board's agenda for concept acceptance. Am. Compl. ¶ 60. On January 13, 2015, the Planning Board granted concept acceptance, though approval was subject to the conditions proposed by the Town's engineer. Id. On February 10, 2015, the Planning Board granted a favorable recommendation for an ODA, which was later approved by the Town Board on March 26, 2015. Id. ¶ 62–63.

On or about October 20, 2015, the Planning Board approved LifeChurch's site plan, subject to the conditions previously placed on the ODA. Id. ¶ 64. LifeChurch subsequently received building permits and commenced construction. Mem. at 7.[1]

On or about June 8, 2016, LifeChurch asked the Planning Board and Town Board to amend the approvals of the ODA and site plan to remove the conditions it now describes as

---

[1] The page numbers for this document refer to those generated by the Court's electronic filing system ("ECF"). Despite the clear language of Local Rule 10.1(a)(7), Defendants failed to paginate their Memorandum. Mem. The Court also notes that Defendants neglected to include a table of contents in their Memorandum despite the requirements of Local Rule 7.1. Defendants are encouraged to carefully review the Local Rules before submitting future filings.

"illegal and unconstitutional." Am. Compl. ¶ 65. About a month later, the Town Board passed a resolution requiring the Planning Board to recommend "whether or not the Town Board should approve Plaintiff's request to remove the conditions." Id. ¶ 66.

The Town's representatives told LifeChurch that it was on the Planning Board agenda for August 23, 2016, but it was removed from the agenda when the Town requested additional information. Id. ¶ 67. Further, "one or more representatives of" Defendants informed LifeChurch that they objected to LifeChurch conducting weddings, banquets and funerals, which they viewed as "external to church services." Id. ¶ 68.

On October 18, 2016, the Planning Board placed LifeChurch on its agenda to consider amending the conditions placed on the ODA permit and site approvals. Id. ¶ 69. But rather than vote at the meeting, the Planning Board again requested additional documentation from LifeChurch and "requested that the process return to the Town Board for a revised resolution." Id. LifeChurch was also informed that it would have to obtain an amended SEQR determination by the Planning Board, a positive recommendation on the ODA by the Planning Board and Town Board, approval of the amended ODA by the Town Board, and approval of the site plan amendment by the Planning Board before the ODA and site plan could be amended. Id.

It appears that LifeChurch abandoned the ODA and site plan amendment process at this point. The Amended Complaint does not allege that it submitted the materials requested by the Planning Board in October 2016 or sought an additional hearing before the Town Board. LifeChurch ultimately concluded that "continuation of proceedings before the Town Planning Board [would] be interminable and futile." Id. ¶ 70.

8

### B. Procedural Background

LifeChurch filed its original complaint on December 17, 2014. Compl. It amended the Complaint on October 15, 2015, Dkt. No. 33 ("First Amended Complaint"), and submitted a further amended complaint on November 3, 2016. Am. Compl. Defendants moved to dismiss the Amended Complaint on November 10, 2016. Mot. Defendants argue that the Court lacks subject matter jurisdiction over LifeChurch's claims because they are not ripe and it has not pursued an Article 78 proceeding, and that the state constitutional claims are redundant. Mem. LifeChurch filed its Motion to Strike on December 7, 2016, arguing that the Defendants attached additional evidence in the form of affidavits and exceeded the maximum page limit allowed for a reply. Mot. to Strike.

On July 31, 2017, while the Motion was pending before the Court, both parties moved for summary judgment. Defs' Mot. for Summary Judgment; LifeChurch's Mot. for Summary Judgment. LifeChurch also moved to exclude Defendants' expert. Mot. to Exclude.

### III. LEGAL STANDARD

A fundamental predicate to judgment in the federal courts is the existence of subject matter jurisdiction. "Dismissal of a case for lack of subject matter jurisdiction . . . is proper 'when the district court lacks the statutory or constitutional power to adjudicate it.'" Ford v. D.C. 37 Union Local 1549, 579 F.3d 187, 188 (2d Cir. 2009) (per curiam) (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)). A lack of subject matter jurisdiction cannot be waived, and may be raised by motion or sua sponte at any time. Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 107–08 (2d Cir. 1997). "If [a] court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."

Fed. R. Civ. P. 12(h)(3). The party asserting subject matter jurisdiction carries the burden of proving its existence by a preponderance of the evidence. E.g., Makarova, 201 F.3d at 113; Augienello v. FDIC, 310 F. Supp. 2d 582, 587–88 (S.D.N.Y. 2004).

## IV. DISCUSSION

### A. Ripeness

Defendants argue that LifeChurch's claims are not ripe for review and should therefore be dismissed under Rule 12(c) for lack of subject matter jurisdiction. Mem. at 8–9. "Ripeness is a doctrine rooted in both Article III's case or controversy requirement and prudential limitations on the exercise of judicial authority." Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 347 (2d Cir. 2005). "Determining whether a case is ripe generally requires [a court] to 'evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.'" Id. (quoting Abbott Labs v. Gardner, 387 U.S. 136, 149 (1967)). "The ripeness requirement prevents a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur, depending on the final administrative resolution." Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals, 282 F.3d 83, 90 (2d Cir. 2002).

In Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172 (1985), the Supreme Court established a two-prong test for determining whether land-use disputes are ripe. Id. at 186–194. The second prong of the test applies only to Fifth Amendment takings claims. Murphy, 402 F.3d at 349. Thus, only the first prong is relevant to this case, and it requires a plaintiff to "obtain a final, definitive position as to how it could use the property from the entity charged with implementing the zoning regulations" before commencing suit. Id. at 348.

But "the first prong of the Williamson ripeness test . . . is not an exhaustion requirement." Roman Catholic Diocese of Rockville Ctr., N.Y. v. Inc. Village of Old Westbury, No. 09-CV-5195, 2012 WL 1392365, at *6 (E.D.N.Y. Apr. 23, 2013). In Williamson, the Supreme Court explained that

> the finality requirement is concerned with whether the initial decisionmaker has arrived at a definitive position on the issue that inflicts an actual, concrete injury; the exhaustion requirement generally refers to administrative and judicial procedures by which an injured party may seek review of an adverse decision and obtain a remedy if the decision is found to be unlawful or otherwise inappropriate.

473 U.S. at 193. Thus, while a plaintiff in a land-use case must obtain a final decision before commencing suit, she need not exhaust all potential state court remedies before seeking relief in federal court. "In sum, absent a futility or remedial finding, prong-one ripeness reflects the judicial insistence that a federal court know precisely how a property owner may use his land before attempts are made to adjudicate the constitutionality of regulations purporting to limit such use." Murphy, 402 F.3d at 349.

1. *LifeChurch's Claims*

LifeChurch alleges violations of its free exercise, assembly, due process, and equal protection rights under the federal and New York state constitutions, as well as RLUIPA. Am. Compl. ¶¶ 72–119.

The finality requirement applies "to zoning challenges based on the First Amendment rights of assembly and free exercise," as well as "claims alleging equal protection violations arising from local zoning disputes." Lang v. Town of Tusten, NY, No. 14-CV-4136, 2015 WL

5460110, at *4–5 (S.D.N.Y. Aug. 6, 2015). RLUIPA prohibits the government from "impos[ing] or implement[ing] a land use regulation in a manner that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that imposition of the burden" is "in furtherance of a compelling governmental interest" and "is the least restrictive means of furthering that compelling governmental interest." § 2000cc(a)(1). It is not "necessary to distinguish the RLUIPA claim from the First Amendment Free Exercise claim when it comes to our ripeness inquiry." Murphy, 402 F.3d at 350. Similarly, due process and free exercise claims under the New York Constitution are subject to the same ripeness analysis. Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona, 915 F. Supp. 2d 574, 596 (S.D.N.Y. 2013). For these reasons, the finality requirement applies to each of LifeChurch's claims.

LifeChurch's argument that its claims are a facial challenge to local zoning provisions and thus exempt from the finality requirement, Opp'n at 11, is unavailing. It is true that "'facial' challenges to regulation[s] are generally ripe the moment the challenged regulation or ordinance is passed." Congregation Rabbinical Coll., 915 F. Supp. 2d at 595 (alteration in original) (quoting Suitum v. Tahoe Reg'l Planning Agency, 520 U.S. 725, 736 n.10 (1997)). But despite LifeChurch's assertions that its Amended Complaint is a "facial attack of the conditions" placed on its site plan, Opp'n at 11, its claims are plainly an as-applied challenge. LifeChurch's claims are premised on Defendants' alleged delay in approving its application and the conditions imposed on its property. E.g., Am. Compl. ¶¶ 63–64, 71, 73, 75. These are textbook as-applied challenges. E.g., Murphy, 402 F.3d at 348–49 (as-applied challenge to an order imposing conditions on the use of plaintiff's property); Dougherty, 282 F.3d at 89 (as-applied challenge

12

premised on defendants' delay in issuing variance). Indeed, LifeChurch's purported "facial attack [on] the conditions" imposed on its property, Opp'n at 11, seems to reflect a misunderstanding of what constitutes a "facial challenge." LifeChurch does not allege that any local ordinance or zoning rules burden religious expression in Colonie, but instead seeks relief from conditions that affect only its property. Cf. Lamar Advert. of Penn, LLC v. Town of Orchard Park, N.Y., 356 F.3d 365, 369 (2d Cir. 2004) (noting that plaintiff "claim[ed] that [a local] sign ordinance was facially unconstitutional," in part because it "discriminated between and among signs bearing commercial and non-commercial speech"); MacDonald v. Safir, 206 F.3d 183, 189 (2d Cir. 2000) ("[A] facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers." (quoting City of Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 759 (1988))); Congregation Rabbinical Coll., 915 F. Supp. 2d at 595 ("Plaintiffs have raised facial challenges to the legality of certain portions of the Village's Zoning Code under the Equal Protection Clauses of both the Federal Constitution and the New York Constitution."). Merely reciting the phrase "facial challenge" does not transform LifeChurch's as-applied challenge into a facial one. Nor does it excuse LifeChurch from the finality requirement.

LifeChurch argues that its claims are ripe because "[t]he ODA conditions became final on March 26, 2015, when the Town Board passed a Resolution approving the ODA subject to impermissible and unconstitutional conditions" and notes that "the Town Planning Board approved the final site plan on October 20, 2015 with the same illegal conditions." Opp'n at 9. The relevant restrictive conditions include limiting the start times for religious services as well as

the number of daily services. Am. Compl., Ex. C. Defendants counter that the challenged conditions are not a final decision because "LifeChurch alleges that it continues to seek final site approval from the Town Planning Board but anticipates that such approval will be subject to the same or substantially similar conditions that it claims burdens [sic] its practice of religion." Mem. at 10. Its claims, Defendants urge, are not ripe and subject to dismissal.

LifeChurch's claims are not ripe for review in federal court because it has not received a final decision from Defendants. In June 2016, after commencing this action, LifeChurch asked Defendants to amend the approvals of the ODA and site plan to remove the conditions it describes as "illegal and unconstitutional." Am. Compl. ¶ 65. The Town Board instructed the Planning Board to recommend "whether or not the Town Board should approve Plaintiff's request to remove the conditions." Id. ¶ 66. As part of this review process, in August and October 2016, Defendants requested that LifeChurch provide additional information and documentation to the Planning Board. Id. ¶¶ 67, 69. The Planning Board also identified several additional steps LifeChurch would need to take to complete the review. Id. ¶ 69.

LifeChurch appears to have abandoned the amendment process in favor of seeking relief in this Court. It does not allege to have complied with the Planning Board's October 2016 request or sought an additional hearing before the Town Board. LifeChurch ultimately concluded that "continuation of proceedings before the Town Planning Board [would] be interminable and futile." Id. ¶ 70.

Failure to pursue a local zoning process to completion renders a challenge to that process unripe for review in federal court. See, e.g., Sunrise Detox V, LLC v. City of White Plains, 769 F.3d 118, 124 (2d Cir. 2014) ("In light of [plaintiff's] midstream abandonment of the zoning

14

process, its claim is not yet ripe."); Murphy, 402 F.3d at 352 (holding that plaintiffs who failed to appeal a cease and desist order to the town zoning board of appeals "may not proceed in federal court until they have obtained a final, definitive position from local authorities as to how their property may be used"). It is clear from the Amended Complaint that Defendants offered LifeChurch an opportunity to amend the approved site plan. Am. Compl. ¶¶ 65–69. LifeChurch cannot short circuit that process by seeking premature relief in federal court. See, e.g., Donovan Realty, LLC v. Davis, No. 07-CV-905, 2009 WL 1473479, at *3 (N.D.N.Y. May 27, 2009) ("In this case, the record is clear that no application for modification was formally filed or decided. Therefore, no final decision has been rendered.").

"The types of injuries claimed by [LifeChurch]—delay and bad faith in the processing of [its] application and loss of desired use of [its] property—are precisely the types of claimed injuries that require a final decision to become potentially cognizable." Osborne v. Fernandez, No. 06-CV-4127, 2009 WL 884697, at *5 (S.D.N.Y. Mar. 31, 2009), aff'd, 414 F. App'x 350 (2d Cir. 2011) (collecting cases). "By forgoing the avenues for relief outlined in the [amendment process], [LifeChurch] deprived [Defendants] of the opportunity to issue a final decision. A federal lawsuit at this stage would inhibit the kind of give-and-take negotiation that often resolves land use problems, and would in that way impair or truncate a process that must be allowed to run its course." Sunrise Detox, 769 F.3d at 124.

Principles of federalism further support dismissal because issues of land use and zoning are fundamentally local concerns. E.g., Murphy, 402 F.3d at 348 ("Requiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution.");

15

Twersky v. Town of Hempstead, No. 10-CV-4573, 2012 WL 4928901, at *5 (E.D.N.Y. Oct. 16, 2012) ("Plaintiffs ask this Court to intervene and interpret the Town's building code, but the zoning board is in the best position to interpret the Town's building code."); Grossi v. City of New York, No. 08-CV-1083, 2009 WL 4456307, at *4 (E.D.N.Y. Nov. 30, 2009) ("[P]olicies of federalism and judicial restraint require that plaintiffs seek relief from local authorities before entering the federal courts.").

### 2. *Futility*

A plaintiff is excused from the finality requirement when further action would be futile. Murphy, 402 F.3d at 349 (citing Southview Assoc., Ltd. V. Bongartz, 980 F.2d 84, 99 n.8 (2d Cir. 1992)). Though it does not expressly raise the argument, LifeChurch appears to suggest that it satisfies the futility exception. Opp'n at 13–14. Life Church argues that its claims are ripe because it has been "subjected to delays, hostility, and obstruction for over 20 months during the land use approval process." Id. at 13. It also claims that Defendants "provided LifeChurch with numerous inconsistent and conflicting direction[s]." Id. at 14.

While the "Second Circuit has not determined 'what the precise contours of the futility exception are,'" Osborne, 2009 WL 884697, at *6 (quoting Homefront Org., Inc.v. Motz, 570 F. Supp. 2d 398, 407 (E.D.N.Y. 2008)), a plaintiff can establish futility by demonstrating that a defendant "has dug in its heels and made clear that all . . . applications will be denied," Murphy, 402 F.3d at 349. Courts also consider defendants' "hostility, delay and obstruction in application of the futility exception." Goldfine v. Kelly, 80 F. Supp. 2d 153, 160 (S.D.N.Y. 2000). "A plaintiff fails to demonstrate futility if the plaintiff's showing is limited to 1) allegations of hostility to the plaintiff unless the prospect of refusal of the plaintiff's application is certain, and

16

2) conclusory allegations alleging bad faith and malicious intent." Donovan, 2009 WL 1473479, at *4 (citing Homefront Org., 570 F. Supp. 2d at 408).

LifeChurch has not established futility. As explained above, the Amended Complaint makes clear that LifeChurch requested and received an opportunity to seek an amendment to the conditions to which it now objects. Am. Compl. ¶¶ 65–70. The mere fact that Defendants requested additional materials to consider LifeChurch's proposed amendments, id. ¶ 69, does not indicate the process is futile. LifeChurch's allegations that Defendants have displayed "long standing hostility and bias against LifeChurch" and that "continuation of proceedings before the Town Planning Board w[ould] be interminable and futile," id. ¶ 70, are merely "conclusory allegations alleging bad faith and malicious intent" and cannot support a finding of futility, Donovan, 2009 WL 1473479, at *4; see also Homefront Org., 570 F. Supp. 2d at 408 ("[C]ourts in this Circuit have recognized that 'mere allegations of open hostility [are] not sufficient to invoke the futility exception.'" (second alteration in original) (quoting Goldfine, 80 F.Supp.2d at 160–61)); Tri–State Video Corp. v. Town of Stephentown, No. 97-CV-965, 1998 WL 72331, at *4 (N.D.N.Y. Feb. 13, 1998) ("[M]ere unsupported conclusory allegations that the [defendant] is openly hostile to its position [are] not sufficient to invoke the futility exception." (citing Xikis v. City of New York, No. 89-CV-2000, 1990 WL 156155 (E.D.N.Y. Sept. 29, 1990)).

This case is unlike those where courts have applied the futility exception. E.g., Donovan, 2009 WL 1473479, at *4 (denying a motion to dismiss where plaintiffs submitted affidavits stating that the defendant stated that "that under no circumstances would the Planning Board ever consider granting the Plaintiffs' request for a site plan amendment at their . . . property."). Indeed, LifeChurch offers no statements by Defendants revealing hostility to its religious purpose

17

or prejudice against its application. LifeChurch's claims that Defendants are hostile to its application or that the outcome of its request for amendments is predetermined are "nothing more than argument, and at best speculation." Tri–State Video, 1998 WL 72331, at *4. Such conclusory allegations do not meet the requirements of the futility exception.

Likewise, the fact that LifeChurch's application has been pending for more than twenty months, Opp'n at 13, does not render the unfinished zoning process futile. Courts have declined to apply the futility exception where plaintiffs faced far longer delays. E.g., Williamson, 473 U.S. at 177–81, 192–93 (claim not ripe after eight-year application process); Dougherty, 282 F.3d at 89 (claim not ripe after five and-a-half-year delay); Goldfine, 80 F. Supp. 2d at 161 (claim not ripe after three-year delay); see also Osborne, 2009 WL 884697, at *6 ("Nor does the fact that Plaintiffs' application was pending before the Planning Board for more than eighteen months at the time of the Complaint excuse Plaintiffs' case from the final decision requirement. Courts have found claims asserting far longer delays to be unripe and ineligible for the futility exception.").

Because LifeChurch has not alleged facts showing that Defendants have "dug in [their] heels and made clear that [its] applications will be denied," Murphy, 402 F.3d at 349, the futility exception does not apply, and its claims are unripe.

**B. Remaining Motions**

Four additional motions are before the Court: Defendants' Motion for Summary Judgment, and LifeChurch's Motion to Strike, Motion for Summary Judgment, and Motion to Exclude. Because the Court has dismissed this case for lack of subject matter jurisdiction, these remaining motions are moot and also dismissed.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion to Dismiss (Dkt. No. 49) is **GRANTED**; and it is further

**ORDERED**, that LifeChurch's Second Amended Complaint (Dkt. No. 48) is **DISMISSED without prejudice to refiling after the Town renders a final decision**; and it is further

**ORDERED**, that LifeChurch's Motion to Strike (Dkt. No. 56) is **DENIED as moot**; and it is further

**ORDERED**, that Defendants' Motion for Summary Judgment (Dkt. No. 58) is **DENIED as moot**; and it is further

**ORDERED**, that LifeChurch's Motion to Exclude (Dkt. No. 59) is **DENIED as moot**;

**ORDERED**, that LifeChurch's Motion for Summary Judgment (Dkt. No. 61) is **DENIED as moot**; and it is further

**ORDERED**, that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties pursuant to the Local Rules.

**IT IS SO ORDERED.**

DATED: September 13, 2017
Albany, New York

Lawrence E. Kahn
U.S. District Judge